UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-475-KSF

JOSH HIMES and MARY HIMES                                                PLAINTIFFS

v.                              **OPINION & ORDER**

UNITED STATES OF AMERICA                                                 DEFENDANT

* * * * * * * * *

Currently before the Court is the motion of the defendant, the United States of America, to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure [DE #8]. This matter is fully briefed and ripe for review.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, Josh and Mary Himes, are husband and wife. Josh Himes was an employee of Ricky L. Childers d/b/a/ Rick Childers Excavating & Fencing ("Childers"). Pursuant to a "Grounds Maintenance Contract" between Childers and the United States, Childers provided grounds maintenance services, including mowing, at the Blue Grass Army Depot, an installation of the United States Army in Richmond, Kentucky. On August 1, 2007, Josh Himes was injured on the job while mowing at the Blue Grass Army Depot.

The plaintiffs filed this civil action on November 19, 2008 pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). In Count I, the plaintiffs allege that Himes was a

1

business invitee, and that the United States Army, a federal agency, failed to exercise ordinary care to maintain the premises of the Bluegrass Army Depot in a reasonably safe condition for the use of its invitees. Specifically, the plaintiffs contend that the defendant's employees "knew or should have known of the unreasonable risk and danger created for the plaintiff and others as a result of a deteriorated and negligently maintained, abandoned, and unused steam pipe." According to the plaintiffs, the steam pipe fell from an overhead trestle and hit Josh Himes in the head, causing serious and permanent physical injury, pain and suffering, lost wages, destruction of the power to earn money, and medical expenses. In Count II, the plaintiffs assert a claim on behalf of Mary Himes for loss of spousal consortium[ DE #1].

The United States has filed its motion to dismiss, or in the alternative, for summary judgment [DE #8]. First, the United States argues that the plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), or alternatively for summary judgment pursuant to Rule 56(c), because the plaintiffs failed to plead and prove that they have completely exhausted their administrative remedies as required by 28 U.S.C. § 2675(a). Second, the United States argues that this Court lacks subject matter jurisdiction over the plaintiffs' claims because the Kentucky Workers Compensation Act provides the plaintiffs' exclusive remedy and, therefore, the Court should dismiss the plaintiffs claims pursuant to Rule 12(b)(1) or enter summary judgment in favor of the defendants pursuant to Rule 56(c).

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A. MOTION TO DISMISS STANDARD

Although the United States filed its motion to dismiss the plaintiffs' claims as a motion for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the failure to exhaust administrative

remedies is not a jurisdictional bar, but rather a condition precedent to an action in federal court. *Zipes v. Trans World Airlines*, 455 U.S. 385, 393-94 (1982). Thus, the issue is more appropriately addressed under Rule 12(b)(6) standards. However, in this case, because the Court must consider matters outside of the pleadings in reaching its decision, the motion to dismiss will be converted into one for summary judgment under Rule 56 (c) of the Federal Rules of Civil Procedure.

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there

3

must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

### B.  ANALYSIS

In order to bring suit under the FTCA, a claimant must first exhaust his or her administrative remedies. Specifically, FTCA provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury . . . or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . . .

28 U.S.C. § 2675(a). Thus, under the plain language of the FTCA, a plaintiff is barred from filing suit before he or she has exhausted these administrative remedies. *McNeil v. United States*, 508 U.S. 106, 112 (1993). In this case, the plaintiffs submitted their administrative claim on Standard Form 95 on March 5, 2008 [DE # 10]. Then, more than six months later, the plaintiffs filed this Complaint on November 19, 2008 [de #1]. The plaintiffs' Complaint and affidavit of their counsel sets out the administrative steps taken by the plaintiffs. The United States failed to make final disposition of this claim within six month, and therefore, by operation of law, the claims are deemed denied. *See* 28 U.S.C. § 2657(a). Accordingly, the defendant's motion to dismiss, or alternatively for summary judgment, based on the plaintiffs' alleged failure to exhaust administrative remedies will be denied.

### III. THE KENTUCKY WORKERS COMPENSATION ACT AND THE EXCLUSIVE REMEDY PROVISION

The United States also contends that this Court lacks subject matter jurisdiction over the plaintiffs' claims based upon the doctrine of sovereign immunity. Specifically, the United States argues that the exclusive remedy provision of the Kentucky Workers Compensation Act and the "up-the-ladder" employer defense bar the plaintiffs' claims. Accordingly, the United States moves the Court to dismiss the plaintiffs' claims pursuant to Rule 12(b)(1), or alternatively, for summary judgment pursuant to Rule 56(c).

#### A. MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) STANDARD

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Fed.R.Civ. P. 12(b)(1). In resolving a motion to dismiss for lack of subject matter jurisdiction, "[t]he Court has wide discretion to consider materials outside the complaint in assessing the validity of its jurisdiction." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Accordingly, even though the Court will consider matters outside the pleadings in order to resolve the jurisdictional issue, there is no need to convert the motion into a motion for summary judgment pursuant to Rule 56(c).

#### B. ANALYSIS

The doctrine of sovereign immunity is jurisdictional in nature, *see FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 324. The FTCA is a limited waiver of the United States' sovereign immunity and it is the exclusive remedy for suits against the

United States or its agencies sounding in tort. 28 U.S.C.§ 2679(a). Under the FTCA, the United States allows tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In other words, the FTCA "waives sovereign immunity to the extent that state-law would impose liability on a private individual in similar circumstances." *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995)(internal quotation and citation omitted). Courts are to look to the law of the state "where the act or omission occurred" to determine the liability of a private person. 28 U.S.C. § 1346(b). In this case, Josh Himes was injured at the Blue Grass Army Depot in Richmond, Kentucky, so the Court will apply Kentucky law to determine liability.

At the time of his injury, Josh Himes, was an employee of Childers. Childers was a contractor of the United States pursuant to a Grounds Maintenance Contract entered into by the United States and Childers. There is no dispute that the Grounds Maintenance Contract required Childers to provide and maintain workers compensation insurance and Childers indeed obtained and furnished the United States Contracting Officer's Representative with a Certificate of Liability Insurance showing that from January 1, 2007 through December 1, 2007, Kentucky AGC/SIF furnished Childers with workers compensation insurance in the limits required by Kentucky law [DE #8-6]. Himes' administrative claim indicates that he has received workers compensation benefits pursuant to Childers' workers compensation insurance policy. At issue before the Court is whether these workers' compensation benefits are the plaintiffs' exclusive remedy under Kentucky law.

The Kentucky Workers Compensation Act states, in pertinent part, as follows:

A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured

6

> the payment of compensation as provided for in this chapter. . . A person who contracts with another:
>
> . . .
>
> (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor . . . .

KRS 342.690(2)(b). The Act further provides, in pertinent part, as follows:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation. . . .

KRS. 342.690(1). "Contractor" is defined in KRS 342.610(2)(b) as "A person who contracts with another . . . [t]o have work performed of a kind which is regular or recurrent part of the work of the trade, business, occupation, or profession of such person." Thus, under Kentucky law, the exclusive remedy for an employee seeking damages from his employer for a work-related injury is the Kentucky Workers Compensation Act. *See* KRS 342.690(1).

The United States asserts the "up-the-ladder" defense, in which an entity "up-the-ladder" from the injured employee who meets all the qualifications of a "contractor" under KRS 342.610(2) is entitled to the immunity provided by KRS 342.690. The United States argues that it is a statutory employer under the definition contained in KRS 342.610, as the work that Himes was doing at the time of the accident was a "regular or recurrent" part of the business of the Blue Grass Army Depot.

The plaintiffs rely on *Davis v. Hensley*, 256 S.W.3d 16 (Ky. 2008), for the proposition that because a "contractor" is clearly defined in KRS 342.610(2)(b) as a "person," the Kentucky

legislature did not intend to include governmental entities within this definition. While it is true that the Kentucky Supreme Court held that state government entities cannot rely on the "up-the-ladder" employer defense, this decision does not affect the FTCA liability of the United States. The FTCA grants a waiver of sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). "The Act says that it waives sovereign immunity 'under circumstances where the United States, if a private person,' not 'the United States, if a state or municipal entity,' would be liable." *United States v. Olson*, 546 U.S. 43, 45-46 (2005)(citing 28 U.S.C. § 1346(b)). Therefore, the Kentucky Supreme Court's holding in *Davis* has no impact on the issue before this Court. *See McWhinnie v. United States*, 2008 WL 2704469 *5 (W.D.Ky. July 9, 2008). Rather, the issue here is whether a private entity, in similar circumstances, would have the availability of the defense. Accordingly, the United States may be considered a contractor under KRS 342.610(2) so long as the work contracted was a "regular or recurrent" part of the business of the Bluegrass Army Depot.

"Recurrent" simply means occurring again or repeatedly. "Regular" generally means customary or normal, or happening at fixed intervals. As the court in *McWhinnie* explained:

> Work of a kind that is "regular or recurrent part of the work of the trade, business or occupation or profession " of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. It is work that is customary, usual or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.

*McWhinnie*, 2008 WL at *6. The work being performed at the time of the accident, pursuant to the

Grounds Maintenance Contract, was mowing. "Even if Defendant never performed its own maintenance work, and only used contractors, it would be a 'distinction without significance', so long as the maintenance work done is usually a regular or recurrent part of such a business." *Fireman's Fund Insurance Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 461 (Ky. 1986).

According to Christine A. Wren, the Supervisory Program Manager in the Directorate of Services and Support at the Blue Grass Army Depot, "[t]he work performed under the Grounds Maintenance Contract, mowing and trimming . . . is maintenance work done regularly and routinely on the BGAD, in that is such mowing and trimming must be done throughout the BGAD during the spring, summer and fall of each year according to a schedule or as needed. . . ." Previously, the maintenance work now undertaken by Childers pursuant to the Grounds Maintenance Contract was done by the Department of the Army civilian employees; however, a determination was made that it was more cost effective to contract out such work. According to Wren, "should it be determined that it is more cost effective for Government employees to perform such work, or should Congress not appropriate funds to pay for such work by contractors, then Government employees would perform such work" [DE # 8-6].

The plaintiffs contend that discovery is necessary to respond to Wren's allegations.[1] They

---

[1] Specifically, the plaintiffs seeks discovery on the following issues: "the Army's mission at the Bluegrass Depot facility, and the Army's mission in general; how a task which has been contracted out for over twenty years can be part of the mission of the Army or "regular or recurrent;" the implications of the Army's task to destroy the nerve gas stored at the Depot; does the fact that Josh was injured in a restricted area and was directed to that area by the Army affect the regular or recurrent analysis; did the Army have actual knowledge that the steam pipe was deteriorated to the point that a collapse was imminent and did it deliberately defer removing or repairing it (or warning of the danger) while at the same time directing Josh to mow in the area; and similar issues."

argue that there is no "basis, factual support, or other reasoning" given for Wren's conclusions. In support of their need for discovery, the plaintiffs rely on *General Electric v. Cain*, 236 S.W.3d 579, 585 (Ky. 2007), wherein the Kentucky Supreme Court found that the plaintiffs were entitled to further discovery on whether the "defendant was the injured worker's statutory employer under a correct interpretation of KRS 342.610(2)(b)." The court further noted that "[s]tatements that amount to legal conclusions are not properly included in an affidavit and, in any event, are not substantial evidence." *Id*. (citing 2A C.J.S. *Affidavits* § 39 (2006)).

In this case, while the defendants have submitted Wren's affidavit concluding that the work performed by Himes was "regular or recurrent," the Court agrees that the plaintiffs are entitled to limited discovery on this issue. Accordingly, the Court will allow limited discovery only on the issue of whether the work performed by Himes, as an employee of Childers pursuant to the Grounds Maintenance Contract, was a "regular" and "recurrent" part of the work of the Blue Grass Army Depot. As a result, the defendants' motion to dismiss based on the exclusive remedy provisions of the Kentucky Workers Compensation Act will be passed for a period of sixty days to allow the parties to conduct limited discovery on this issue. At the conclusion of the sixty day period, and within fifteen days thereafter, the parties may file contemporaneous briefs on this issue.

IV. **CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiffs' motion for a hearing [DE #13] is **DENIED**;

(2) the defendants' motion to dismiss based on exhaustion of administrative remedies [DE #8] is **DENIED**;

(3) the defendants' motion to dismiss based on the exclusive remedy provisions of the Kentucky Workers Compensation Act [DE #8] is **PASSED** pending further discovery;

(4) for a period of **SIXTY DAYS FROM ENTRY OF THIS ORDER**, the parties may engage in **LIMITED DISCOVERY** only on the issue of whether the work performed by Himes, as an employee of Childers pursuant to the Grounds Maintenance Contract, was a "regular or recurrent" part of the work of the Blue Grass Army Depot;

(5) **WITHIN FIFTEEN DAYS** after the conclusion of the sixty day discovery period, the parties shall **FILE** contemporaneous briefs on this issue. No further briefing will be allowed.

This August 28, 2009.

**Signed By:**
*Karl S. Forester*  KSF
**United States Senior Judge**