UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-475-KSF

JOSH HIMES and MARY HIMES　　　　　　　　　　　　　　　　　　　　　PLAINTIFFS

v.　　　　　　　　　　　　　　**OPINION & ORDER**

UNITED STATES OF AMERICA　　　　　　　　　　　　　　　　　　　　　DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiffs, Josh and Mary Himes, filed this civil action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680, alleging that plaintiff Josh Himes was injured while working as an employee of a government contractor, Rick L. Childers ("Childers"), at the Blue Grass Army Depot ("BGAD") in Richmond, Kentucky. In their Complaint, the plaintiffs allege that the United States negligently maintained the premises at BGAD, resulting in severe injuries to plaintiff Josh Himes when a steam pipe fell from an overhead trestle while he was mowing the grass at BGAD [DE #1].

The United States has filed its motion dismiss or in the alternative, for summary judgment, based on the "up-the-ladder" defense under Kentucky's workers compensation law [DE #8]. The United States contends that it is an entity "up-the-ladder" from Himes who meets all the qualifications of a "contractor" under KRS 342.610(2) and thus is entitled to immunity under KRS 342.690. By Opinion & Order of August 28, 2009, this Court concluded the United States should be afforded "up-the-ladder" immunity so long as the work contracted by Childers and performed by

1

Himes was a "regular" or "recurrent" part of the business of the BGAD. Based on the plaintiffs' request, the Court allowed the plaintiffs to conduct limited discovery and ordered the parties to file contemporaneous briefs on this issue. The limited discovery period has closed, both parties have submitted their briefs, and this issue is now ripe for review.

I.  ANALYSIS

The Court has previously set out the relevant facts and law related to Kentucky's workers compensation law and the "up-the-ladder" defense. As explained in the Opinion & Order of October 28, 2009, the only remaining issue is whether the work performed by Himes, as an employee of Childers and pursuant to the Grounds Maintenance Contract, was a "regular" and "recurrent" part of the business of the BGAD [DE #17].

The Court has carefully reviewed the evidence submitted by the United States, and finds that Himes' work - mowing and grounds maintenance - was indeed a "regular" and "recurrent" part of the business of the BGAD. At the time of the accident, Himes was mowing around the buildings in Lot 7, a restricted area of BGAD, on a riding mower furnished by his employer, Childers. Childers was the government contractor performing grounds maintenance services, including mowing, pursuant to the Grounds Maintenance Contract between Childers and the United States. As explained by John Patton, the Lead Engineer for Business Operations for Southeastern U.S. Public Works, Southeast Region, Headquarters, Installation Management Command - Southeast Region, U.S. Army, Atlanta, Ga, many Primary Installations, like the BGAD, contract out grounds maintenance services. Others have the same work performed by Department of Army civilian personnel, and others use Army Soldiers to mow the grass. Nevertheless, Patton explained that while the frequency of mowing varies based on different factors, mowing is a "regular" activity at

Army installations like BGAD [DE #28].

At the BGAD, Christine A. Wren, Supervisory Program Manager, Directorate of Services and Support, BGAD, explained that under the Grounds Maintenance Contract between Childers and the United States, Childers agreed to mow a minimum of 6 times and a maximum of 30 times during each mowing season. She further explained that at BGAD, some areas are mowed pursuant to the Grounds Maintenance Contract with Childers, others are left unmowed, and others are mowed by government employees. She defined cost is the primary factor in determining whether to contract out grounds maintenance, or to have it performed by military or civilian Army employees. [DE #27].

The plaintiffs have failed to come forward with any specific facts to dispute the fact that the mowing and grounds maintenance by Childers at BGAD is regular or recurrent. However, the plaintiffs now argue that mowing cannot be part of the "trade, business, occupation, or profession" of the United States at the BGAD, as required by KRS 342.610. The Court disagrees. While certainly mowing is not central to the Army's purpose at BGAD, Sixth Circuit cases have held that "regular" or "recurrent" work includes regular maintenance. *Granus v. North Am. Philips Lighting Corp.*, 821 F.2d 1253, 1257-58 (6th Cir. 1987)(holding that routine maintenance on a furnace at a manufacturing facility was a recurrent part of the defendant manufacturer's business); *Thompson v. The Budd Co.*, 199 F.3d 799, 805 (6th Cir. 1999)(holding that immunity applies even where the subcontractor's work extends beyond the defendant's primary business objective); *McWhinnie v. United States*, 2008 WL 2704469 (6th Cir. July 9, 2008)(holding that repair by a subcontractor of water pipe at the central energy plant at Fort Campbell pursuant to warranty provision of a contract, which would have been completed by the defendant's maintenance division but for the contract, was a regular part of the United States' business). Thus, based on the caselaw and the evidence contained

in the United States' Supplemental Memorandum, including the depositions of Patton and Wren, the Court finds that, at the time Himes was injured at BGAD, his work pursuant to the Grounds Maintenance Contract between Childers and BGAD easily meets the standards for "regular" or "recurrent" work of the trade, business, occupation or profession of the BGAD. Accordingly, the United States is entitled to immunity under KRS § 342.690(l), and its motion for summary judgment will be granted.

## II. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the defendants' motion to dismiss, or in the alternative, for summary judgment [DE #8] is **GRANTED**; and

(2) judgment in favor of the defendants will be entered contemporaneously herewith.

This February 3, 2010.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**